IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

)
In re DREYFUS MUTUAL FUNDS    )  Master File 04-0128
FEE LITIGATION                )
                              )

MEMORANDUM

Gary L. Lancaster,
District Judge.                              September 28, 2005

This is a putative class action in securities fraud. Plaintiffs, Vera A. Hays and Noah Wortman, allege that defendants, investment advisors, distributors, and directors of Dreyfus brand mutual funds, engaged in fraudulent fee arrangement schemes in violation of the Investment Company Act, the Investment Advisors Act, and Pennsylvania statutory and common law. Plaintiff seeks to recover the wrongfully charged fees and rescind the fee agreements under which these payments were made. Defendants have filed various motions to dismiss in which they argue that plaintiffs' complaint is legally and factually insufficient.

For the reasons set forth below, the motions will be disposed of as follows:

Premier's Motion to Dismiss [doc. no. 22] is granted;

Director Defendants' Motion to Dismiss [doc. no. 25] is granted;

Parent Companies', Dreyfus Service Corporation's, and Investment Advisor Defendants' Motion to Dismiss [doc. no. 29] is granted, in part, and denied, in part[1];

Nominal Defendant's Motion to Dismiss [doc. no. 33] is granted.

I.    BACKGROUND

    A.    The Parties

Two named plaintiffs bring this putative class action suit: plaintiff Hays, an investor in the Dreyfus Disciplined Stock Fund, and plaintiff Wortman, an investor in the Dreyfus (Basic) S&P 500 Stock Index Fund. Plaintiffs allege that they hold their shares currently, and that they also held them at some point between January 30, 1999 and November 17, 2003, the proposed Class Period.

Plaintiffs have named five groups of defendants in their complaint: The Parent Companies, The Investment Advisors, The Distributors, The Directors, and The Dreyfus Funds. The Parent Companies are Mellon Financial and its wholly-owned subsidiary Mellon Bank, which acts as custodian of the Dreyfus Funds. The Investment Advisor Defendants are Dreyfus, a wholly-owned subsidiary of Mellon Bank, and Founders Asset Management LLC.

---

[1] These defendants' motions for leave to file notice of supplemental authority [doc. nos. 56, 58] are granted. The court has considered the case law attached to those motions.

2

Both are mutual fund management companies and have responsibility
for overseeing the day-to-day management of the Dreyfus Funds.
The Distributor Defendants are Dreyfus Service Corporation, a
wholly-owned subsidiary of Dreyfus, and Premier Mutual Fund
Services.[2]   The Director Defendants are nine individuals who
acted as directors of some of the Dreyfus Funds, and in some
instances of related entities, such as Mellon Bank.  The Dreyfus
Funds, named as nominal defendants, are approximately 155 mutual
funds that are managed by Dreyfus or Founders.

## B.   The Factual Allegations

Plaintiffs allege the following facts.  In the most general
terms, plaintiffs allege that defendants participated in an
undisclosed mutual fund kick-back scheme through which they
obtained substantial payments as a result of pushing Dreyfus
Funds on unwitting investors.  According to plaintiffs, the
alleged scheme took the form of Shelf-Space agreements with major
brokerage houses, financed with wrongful Directed Brokerage and
Revenue Sharing arrangements, and improper use of 12b-1 Marketing
Fees and Soft Dollars.  Plaintiffs allege that substantial

---

[2] The Parent Companies, Investment Advisor Defendants, and
one of the Distributor Defendants, Dreyfus Service Corporation,
have filed a single motion to dismiss.  These parties refer to
themselves as "The Dreyfus Defendants".  The other Distributor
Defendant, Premier Mutual Fund Services, has filed a separate
motion, as have the Director Defendants and the Nominal
Defendants.

3

improper payments were made from mutual fund assets to ensure that major brokerage houses, such as Paine Webber and Merrill Lynch, would encourage their investors to buy Dreyfus brand mutual funds, rather than some other brand of mutual fund.[3]

Plaintiffs complain that these arrangements were not disclosed to investors, created conflicts of interest between investors and defendants, and resulted in excessive fees being charged to investors' accounts. According to plaintiffs, because the Distributor and Investment Advisor Defendants' fees were calculated based on the aggregate amount of money invested in Dreyfus products, they participated in these kick-back schemes in order to increase their own fees, without regard to the best interest of the investors, whom they were charged with protecting.    In turn, plaintiffs allege that the Investment Advisor Defendants paid the Director Defendants excessive salaries in exchange for their approval of these wrongful schemes, making the Directors beholden to the Investment Advisors and their schemes, rather than to the best interest of the investors.

---

[3] Plaintiffs have not sued the brokerage houses in this action.    The Securities and Exchange Commission has already imposed substantial fines on several brokerage houses for their role in such schemes.

4

C. The Complaint

The consolidated amended complaint [doc. no. 17] asserts causes of action under the Investment Company Act of 1940, 15 U.S.C. §80a-1, the Investment Advisers Act of 1940, 15 U.S.C. §80b-1, and Pennsylvania statutory and common law. With the exception of the IAA claim, which is asserted derivatively, all causes of action are brought on behalf of the proposed Class.

Count I. Asserted against the Investment Advisor Defendants and the Director Defendants for violations of §34(b) of the Investment Company Act. Plaintiffs allege that these defendants made materially false and misleading statements in prospectuses by failing to disclose the payment schemes detailed above.

Count II. Asserted against the Distributor Defendants, the Investment Advisor Defendants, and the Director Defendants for violations of §36(a) of the Investment Company Act. Plaintiffs allege that these defendants breached their fiduciary duties to investors by taking part in the payment schemes detailed above.

Count III. Asserted against the Distributor Defendants, the Investment Advisor Defendants, and the Director Defendants for violations of §36(b) of the Investment Company Act. Plaintiffs allege that these defendants breached their fiduciary duties with respect to the receipt of compensation for services by taking part in the payment schemes detailed above.

AO 72A
(Rev.8/82)

Count IV. Asserted against Dreyfus and the Parent Companies for violations of §48(a) of the Investment Company Act. Plaintiffs allege that these defendants, as "control persons", are secondarily liable for the misconduct of the Investment Advisor Defendants and Distributor Defendants alleged in Counts I, II, and III.

Count V. Asserted against the Investment Advisor Defendants for violations of §§206 and 215 of the Investment Advisor Act. Plaintiffs' allege that these defendants breached their fiduciary duties by entering into investment advisor contracts which permitted improper payments under the above schemes.

Count VI. Asserted against all defendants for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. §201-9.2(a). Plaintiffs have affirmatively abandoned this claim.

Count VII. Asserted against the Investment Advisor Defendants for breach of fiduciary duty under Pennsylvania common law.

Count VIII. Asserted against the Director Defendants for breach of fiduciary duty under Pennsylvania common law.

Count IX. Asserted against all defendants for aiding and abetting breach of fiduciary duty under Pennsylvania common law.

6

Count X. Asserted against all defendants for unjust enrichment under Pennsylvania common law. Plaintiffs assert that defendants received wrongful sums as a result of their participation in the payment schemes.

## II. STANDARD OF REVIEW

When the court considers a Rule 12(b)(6) motion to dismiss[4], the issue is not whether plaintiff will prevail in the end or whether recovery appears to be unlikely or even remote. The issue is limited to whether, when viewed in the light most favorable to plaintiff, and with all well-pleaded factual allegations taken as true, the complaint states any valid claim for relief. See ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994). In this regard, the court will not dismiss a claim merely because plaintiff's factual allegations do not support the particular legal theory he advances. Rather, the court is under a duty to examine the complaint independently to determine if the factual allegations set forth could provide relief under any viable legal theory. 5A Charles Alan Wright & Arthur R. Miller,

---

[4] A district court has discretion in deciding whether to consider materials outside of the complaint in ruling on a motion to dismiss. Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 559-60 (3d Cir. 2002) (citing Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992)); Morse v. Lower Merion School Dist., 132 F.3d 902, 905 n.3 (3d Cir. 1997). We have not considered any documents outside of the complaint in ruling on this motion. Therefore, we have not converted this motion into a summary judgment motion pursuant to Rule 12(b).

7

Federal Practice & Procedure § 1357 n.40 (2d ed. 1990); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Plaintiffs need not prove or establish all of the facts necessary to ultimately prevail on their claims in order to survive a motion to dismiss. Nor can defendants prevail on a motion to dismiss by arguing that plaintiffs' legal theories are unreasonable or unprovable. Instead, in ruling on a motion to dismiss, we seek only to determine whether, taking all well-pleaded factual allegations taken as true, the complaint states any valid claim for relief.

III. DISCUSSION

A. Counts I and II - No Private Right of Action

1. Summary

The Dreyfus Defendants, Director Defendants, and Premier have moved to dismiss Counts I and II of the Complaint on the ground that there is no implied private right of action under sections 34(b) and 36(a) of the Investment Company Act. 15 U.S.C. §§80a-33(b) and 80a-35(a). According to these defendants, there is no contemporaneous Congressional intent to imply private enforcement of sections 34(b) and 36(a). Defendants assert that those cases finding implied private rights of action under other sections of the ICA belong to an ancien regime, and should no longer be followed. Finally, defendants argue that the existence

8

of an express private right of action in section 36(b) of the Act negates an intention to imply one under section 36(a).

Plaintiffs contend that implied private rights of action under sections 34(b) and 36(a) of the ICA have a long and established history and fulfill Congress's clear intent to protect mutual fund investors. Plaintiffs argue that the text and structure of these statutes, as well as the legislative history, support their position. The court finds that there is no implied private right of action under either section 34(b) or 36(a) of the ICA. Therefore, we dismiss Counts I and II of the complaint.

## 2. Legal Authority

Sections 34(b) and 36(a) of the ICA do not contain an express private right of action. Therefore, this court must determine whether an implied private right of action exists under either section. There is no decision from either the Supreme Court or the Court of Appeals for the Third Circuit considering whether to imply a private right of action under these two sections of the ICA.[5] While we acknowledge that both district

---

[5] We are aware of the decisions from our Court of Appeals in Bancroft Convertible Fund, Inc. v. Zico Inv. Holdings Inc., 825 F.2d 731 (3d Cir. 1987) and Taussig v. Wellington Fund, Inc., 313 F.2d 472 (3d Cir. 1963). However, those cases implied private rights of action under two different sections of the ICA, which, as plaintiffs themselves recognize, makes (continued...)

9

courts and courts of appeal in other jurisdictions have, in recent years, moved away from finding implied private rights of action under the ICA, these cases are not controlling. As such, we find it advisable to decide this issue by applying the tests developed by the Supreme Court for evaluating whether to imply a private right of action under a federal statute.

In Cort v. Ash, 422 U.S. 66 (1975), the Supreme Court set forth a four part test to determine whether an implied private right of action exists: (1) whether plaintiff is a member of the class "for whose especial benefit the statute was enacted"; (2) whether there is evidence of legislative intent to create or preclude the relief sought; (3) whether the relief sought is consistent with the legislative scheme; and (4) whether the relief sought is the type that is "traditionally relegated" to the states, such that federal relief would interfere with the state scheme. Cort, 422 U.S. at 78.

Although the Cort test is still good law, subsequent Supreme Court decisions have stressed the paramount importance of making a threshold inquiry into the intent of Congress by

---

[5] (...continued)

them distinguishable from the instant matter. See Doc. No. 43, p. 11, n. 12. In addition, both cases rely heavily on the rule established in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 381-82 (1982) that Congressional inaction can evidence a Congressional intent to ratify existing court decisions, which rule has been strongly rejected in more recent Supreme Court opinions. Alexander v. Sandoval, 532 U.S. 275, 292 (2001).

10

looking, first and foremost, to the text of the statute. Alexander v. Sandoval, 532 U.S. 275, 286-92 (2001); Univ. Research Ass'n, Inc. v. Coutu, 450 U.S. 754, 771-72 (1981); Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16 (1979); Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979). Where this threshold inquiry is answered in the negative, the analysis ends there. Alexander, 532 U.S. at 288. According to the Supreme Court, we are no longer to imply private rights of action simply because such remedies are necessary to effectuate the Congressional purpose behind a statute. Alexander, 532 U.S. at 287-88; compare Whitman v. Fuqua, 549 F.Supp. 315, 321 (W.D. Pa. 1982) (citing pre-Alexander cases in which courts implied private rights of action under the ICA because the clear Congressional purpose of the ICA was to protect investors). Nor are we to consider the legal context in which a statute was enacted, other than to the extent that the context clarifies ambiguities in the text of a statute. Alexander, 532 U.S. at 288. We are to consult the legislative history only in order to shed light on ambiguous statutory text. Exxon Mobil Corp. v. Allapattah Services, Inc., ___ U.S. ___, 125 S.Ct. 2611, 2626 (2005).

We are, where possible, to begin and end our search for Congress's intent with the text and structure of the federal statute. Alexander, 532 U.S. at 288. For a statute to create an

11

implied private right of action, its text must be phrased in terms of the persons benefitted and must manifest an intent to create a private remedy, in addition to a private cause of action. Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002) (citing Alexander, 532 U.S. at 286). Statutes that focus on the person regulated, rather than the individuals protected, do not evidence an intent to create an implied private right of action. Alexander, 532 U.S. at 289 (citing California v. Sierra Club, 451 U.S. 287, 294 (1981)); Cannon v. Univ. of Chicago, 441 U.S. 677, 692 n.13 (1979).

### 3. Discussion

In this case, we need not look beyond the text of the statutory sections asserted by plaintiffs to dispense with their section 34(b) and 36(a) claims. Section 34(b) of the ICA focuses exclusively on the person regulated, and not the persons benefitted. That section lists two things that those filing reports with the SEC are prohibited from doing. Each prohibition begins with the introduction that "[i]t shall be unlawful for any person..." 15 U.S.C. §80a-33(b). There is no language in this section about persons benefitted by this section.

Plaintiffs' attempts to transform section 34(b) into a "persons benefitted" statute based on its cross reference to section 31(a) of the ICA is unavailing. Section 31(a) addresses

12

the maintenance of records, more specifically retention policies and compliance burdens. 15 U.S.C. §80a-30(a). The phrase "for the protection of investors" specifically modifies the SEC's duty to establish appropriate holding periods for records and to reduce the compliance burden on filers. Therefore, as a factual matter, section 31(a) itself is not a broad "persons benefitted" section, as plaintiffs contend. We find in this case that a cross-reference to another statute that happens to mention the phrase "for the protection of investors" is not enough to transform an unambiguous "person regulated" section into a "person benefit" section.

Therefore, we find no Congressional intent evidenced in the text or structure of section 34(b) to imply a private right of action. Under Alexander, our analysis ends there. We are no longer to consider the Congressional purpose behind the statute, the legal context in which it was enacted, or the legislative history. Accordingly, we find that there is no implied private right of action under section 34(b) of the ICA.

Our conclusion regarding section 36(a) is the same. That section explicitly states that "the Commission is authorized to bring an action..." alleging a breach of fiduciary duty. 15 U.S.C. §80a-35(a). This statutory text actually evidences a legislative intent to preclude the relief sought by its clear indication of one, and only one, entity that has the power to

13

enforce its provisions.  Cort, 422 U.S. at 78.  Based on this unambiguous statutory text, there is no basis on which to find a Congressional intent to imply a private right of action.  Such an action would, in fact, directly contradict the language of the statute.   Again, where the language of the statute is unambiguous, we need look no further to answer the dispositive question of Congressional intent.  Therefore, we find that there is no implied private right of action under section 36(a) of the ICA.

Because we find that there is no implied private right of action under either section 34(b) or section 36(a) of the Investment Company Act, we dismiss Counts I and II of the complaint.[6]

## B.  Count III - Sufficiency of Factual Allegations

These defendants have also moved to dismiss plaintiffs' 36(b) claim on the ground that plaintiffs have failed to adequately plead their cause of action.  According to defendants, in order to successfully plead a cause of action under that statute, plaintiff must allege sufficient facts to show that the challenged fees were so disproportionately large that they bear no reasonable relationship to the services rendered.  Plaintiffs

---

[6] Because our ruling disposes of these claims in their entirety, we need not rule on defendants' alternative arguments in support of dismissal.

14

contend that they can survive a motion to dismiss this count
because they have satisfied the liberal pleading requirements of
the Federal Rules of Civil Procedure. The court finds that
plaintiffs' 36(b) claim is adequately pled.

Section 36(b) of the ICA provides that an investment
advisor has a "fiduciary duty with respect to the receipt of
compensation." 15 U.S.C. §80a-35(b). To violate section 36(b),
the advisor must charge a fee that is so disproportionately large
that it bears no reasonable relationship to the services
rendered and could not have been the product of arms'-length
bargaining. Krantz v. Prudential Inv. Fund Mgmtt LLC, 305 F.3d
140, 143 (3d Cir. 2002); see also Gartenberg v. Merrill Lynch
Asset Mgmt., Inc., 694 F.2d 923, 928 (2d Cir. 1982). Plaintiffs
have alleged that defendants breached this duty by collecting
fees under their wrongful schemes. Specifically, plaintiffs
contend that defendants breached their duties by collecting fees
in excess of standard charges, and in violation of SEC rules, and
by failing to pass savings realized by economies of scale on to
the investors.

There is no question that in order to determine whether a
fee is excessive for purposes of section 36(b), a court must
examine the relationship between the fees charged and the
services rendered by the investment advisor. Krantz, 305 F.3d at
143 (citing Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d

15

321, 330 (4th Cir. 2001)). Merely alleging that fees or costs were high or wrongful is not enough to satisfy the pleading requirements for a section 36(b) claim. Id. In layman's terms, the definitive question is whether the investors got their money's worth out of their investment managers, not whether the fee structures were right or wrong, fair or unfair, or high or low.

The bulk of plaintiffs' section 36(b) allegations center on the "wrongfulness" of the compensation paid to these defendants, without regard to the services rendered. As such, they do not support a section 36(b) claim under the applicable standards. However, plaintiffs have also included key allegations that save their complaint from dismissal. They allege that the fees were excessive because savings realized from economies of scale were not passed on to the investors. Section 36(b) was enacted in large part because Congress recognized that as mutual funds grew larger, it became less expensive for investment advisors to provide additional services. See Migdal, 248 F.3d at 326-27. Congress wanted to ensure that investment advisors passed on to fund investors the savings that they realized from these economies of scale. Id. (citing Fogel v. Chestnutt, 668 F.2d 100, 111 (2d Cir. 1981)). In addition, plaintiffs have alleged that the board of directors were neither independent or conscientious. See Krinsk v. Fund Asset Mgmt., Inc., 875 F.2d

16

404, 409 (2d Cir. 1989) (noting that a court must examine, among other factors, the independence and conscientiousness of the trustees, in determining whether a fee is excessive under section 36(b)). Taking all of these allegations as true, and applying the deferential motion to dismiss standard, we find that plaintiffs have adequately pled a cause of action under section 36(b).

We recognize that this is a close case, but in ruling on a motion to dismiss, we will give plaintiffs every possible benefit of the doubt and reasonable inference. We emphasize that we do not determine at this stage in the case whether plaintiffs can prove their allegations, or, if proven, whether those facts alone will legally support a claim under section 36(b).[7] We find only that plaintiffs have satisfied the threshold requirements of Rule 12(b)(6). We will not dismiss Count III on the ground that it is insufficiently pled.

___

[7] We do not decide at this stage of the case how the fact that the named plaintiffs are only "security holders" (as required by statute) in two of the Dreyfus Funds might affect this case. To be clear, we do not find that this is an issue of Constitutional standing. Plaintiffs' one surviving independent claim is under section 36(b) of the ICA. Because a section 36(b) claim is not brought derivatively, we need not address the funds on whose behalf this claim can be brought. Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 734 (3d Cir. 1970). In addition, a section 36(b) claim could not be asserted against the nominal defendants, as that section allows for recovery only from the recipients of advisory compensation. The nominal defendants received no such compensation and the fund assets will not be a source of recovery to plaintiffs under this cause of action.

17

C. Count III - No Liability Against Director Defendants

The Director Defendants have moved to dismiss the section 36(b) claim against them because they are not the recipients of any advisory compensation. The Director Defendants argue that because the only monies that they received were their salaries, they cannot be held liable under section 36(b). Plaintiffs contend that the Director Defendants could be held liable under section 36(b) as indirect recipients of the advisory compensation. Plaintiffs argue that a final determination on this issue should be addressed at the summary judgment, and not the motion to dismiss, stage. The court finds that plaintiffs' 36(b) claim against the Director Defendants is not legally cognizable. Therefore, Count III will be dismissed as to the Director Defendants.

Under section 36(b), investment advisors, and their affiliates, have a fiduciary duty with respect to the receipt of compensation or payments for their services. 15 U.S.C. §80a-35(b). There is no dispute that a security holder may bring a cause of action under this section. However, the statute limits, but its terms, who such an action may be brought against. Section 36(b)(3) states that:

> No such action shall be brought or maintained against any person other than the *recipient* of such compensation or payments, and no damages or other relief shall be granted against any person

18

> other than the *recipient* of such
> compensation or payments.

15 U.S.C. §80a-35(b)(3) (emphasis added).

Plaintiffs acknowledge that the Director Defendants did not actually receive compensation for investment advisor services, but instead contend that the Director Defendants were indirect recipients of such compensation. Plaintiffs provide the court with no legal support for the concept that section 36(b), contrary to its express language, applies to indirect recipients of advisory compensation. Plaintiffs instead simply argue that the Director Defendants should be, or could possibly be, liable under section 36(b) because they were paid high salaries in order to induce them to breach their fiduciary duties to investors. However, this argument ignores the plain text of the statute. The statute does not provide for the recovery of any and all monies from anyone who may have been involved in a breach of fiduciary duty owed to mutual fund investors. Instead, the statute allows for recovery of advisory compensation from the person or entity who received it. Where Congress has provided so carefully for one method of enforcement, courts are not lightly to impute another method. Transamerica Mortgage, 444 U.S. at 19.

The only allegation regarding monies paid to the Director Defendants is a listing of each Director's "excessively high" salary. Plaintiffs' complaint contains no allegations that the Directors' salaries were used as a way to divert, disguise, or

19

launder advisory compensation.  See Green v. Fund Asset Mgmt.,
L.P., 147 F.Supp.2d 318, 329-30 (D.N.J. 2001) (holding that
officers could not be held liable where only allegations were that
officers received salaries, and no allegations were made regarding
attempts to evade liability by disguising advisory fees as
officers' salaries).  There are no allegations that the Director
Defendants were affiliated persons of the advisors under the
statute.  15 U.S.C. §80a-35(b).  There is not even the fundamental
allegation that the Director Defendants received compensation for
advisory services, putting them within the reach of section 36(b).
See In re TCW/DW N. Am. Gov't Income Trust Security Litig., 941
F.Supp. 326, 343 (S.D.N.Y. 1996) (holding that underwriters could
not be held liable where the complaint did not allege that they
received compensation for advisory services, even though they
received other fees); see also Halligan v. Standard &
Poor's/Intercapital, Inc., 434 F.Supp. 1082, 1085 (E.D.N.Y. 1977)
(noting that section 36(b) must be narrowly read to mean that only
those who receive money paid by the investment company for
investment advisory services may be held liable for breach of
their fiduciary duty with respect to such payments); In re Eaton
Vance Mut. Funds Fee Litig., 2005 WL 1813001, *13 (S.D.N.Y. Aug.
1, 2005) (rejecting argument that a section 36(b) claim could be
sustained based on allegations of indirect receipt of advisory
compensation).

AO 72A
(Rev.8/82)

Although we are mindful of the deferential standard governing a motion to dismiss, we find that, under the facts alleged in this case, the Director Defendants' receipt of a salary cannot fall within section 36(b)'s cause of action for recovery of investment advisor fees from the advisor or his affiliates. Drawing a purportedly high director's salary, without more, is simply not enough to sustain liability under section 36(b). We will dismiss Count III to the extent it is asserted against the Director Defendants.

## D.  Count III - No Liability Against Premier

Premier, one of the Distributor Defendants, has moved to dismiss the section 36(b) claim against it on statute of limitations grounds. Premier argues that because this action was instituted nearly four years after it stopped distributing Dreyfus Funds, there is no possibility of a section 36(b) recovery against it. Plaintiffs argue that because they have adequately alleged that Premier participated in wrongdoing during the proposed Class Period (January 30, 1999 to November 17, 2003), the potential liability of Premier is a question of fact to be decided at a later time. The court finds that the 36(b) claim against Premier is time barred and will dismiss Count III as to Premier.

Technically, the Federal Rules of Civil Procedure require that the affirmative defense of the statute of limitations be

21

pleaded in the answer. Fed.R.Civ.P. 12(b). However, under the so-called "Third Circuit Rule" a limitations defense can be raised by a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citing Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Id. (citing Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)).

In this case, the statute of limitations bar is apparent on the face of the complaint. Section 36(b) contains a one year statute of limitations. 15 U.S.C. §80a-35(b)(3) ("No award of damages shall be recoverable for any period prior to one year before the action was instituted.") This case was instituted on January 30, 2004. Therefore, plaintiffs cannot recover any damages sustained prior to January 30, 2003. Premier ceased distributing Dreyfus funds in March of 2000. It is clear on the face of the complaint, and undisputed, that Premier's involvement with the Dreyfus Funds ended nearly three years prior to the expiration of the one year statute of limitations.

Plaintiffs argue, in a footnote, that their section 36(b) claim against Premier survives because they have "...adequately

22

allege[d] that Premier participated in the wrongdoing during the Class Period". See Doc. No. 43, pp. 7-8, n. 8. However, plaintiffs have provided this court with no legal or factual support for their contention that they can evade a clear, statutory limitations period by unilaterally proposing a Class Period that stretches beyond it. The proposed Class Period does not change the one year statute of limitations, nor the fact that Premier stopped distributing Dreyfus Funds almost three years prior to its expiration. As such, we will dismiss Count III to the extent that it is asserted against Premier.[8]

### E. Count V - Demand Is Not Excused

The Investment Advisor Defendants move to dismiss plaintiffs' breach of fiduciary duty claim under the Investment Advisors Act on the ground that plaintiffs failed to make a demand on the directors to bring the case and that plaintiffs failed to adequately plead fraud. Plaintiffs respond that demand on the directors should be excused because it would have been futile and that they have adequately pled fraud. As an initial matter, because this claim is brought derivatively, the court finds that it can only be asserted on behalf of the two funds that plaintiffs own. Further, the court finds that, based on the allegations of

---

[8] Given that we have dismissed this claim against Premier, we need not reach the merits of Premier's argument that this cause of action is insufficiently pled under Rule 9(b).

23

the complaint, plaintiffs have failed to meet the standards for allowing demand on those two boards of directors to be excused as futile. Therefore, Count V is dismissed.

### 1. Derivative Suit Against Owned Funds Only

Plaintiffs' Investment Advisor Act claim is brought derivatively. Plaintiffs are investors in only two of the approximately 155 mutual funds named as nominal defendants. It is settled law that an investor does not have standing to bring a derivative action on behalf of mutual funds in which he has not invested, even if those funds are similarly situated. Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 734 (3d Cir. 1970). As a result, regardless of our ultimate disposition of Count V, plaintiffs could only maintain their derivative IAA claim on behalf of the Disciplined Fund and the S&P Index Fund.

### 2. Demand on the Board of Directors

Next we turn to defendants' argument that demand on the board of directors should not be excused as futile. Plaintiffs' derivative claim must comply with Rule 23.1 of the Federal Rules of Civil Procedure. That rule imposes a duty on a derivative action plaintiff to allege the efforts made to obtain the desired action from the board of directors, or the reasons for plaintiff's not making the effort. Fed. R. Civ. P. 23.1. Here, plaintiffs allege that they made no demand on the board of directors because

24

such demand would have been futile.  Under Maryland Law[9], demand
on the board of directors is excused as futile when a majority of
the directors are so personally and directly conflicted or
committed to the decision in dispute that they cannot reasonably
be expected to respond to a demand in good faith.  Werbowsky v.
Collomb, 766 A.2d 123, 144 (Md. 2001).  The court finds that it
is unable to excuse the demand requirement as futile under the
facts as currently pled.

Plaintiffs have named nine individual Director Defendants,
and have made allegations as to their improper conduct, their role
in the alleged schemes, and their service at the pleasure of the
Investment Advisor Defendants.  However, we have been unable to
locate any factual allegations indicating whether these nine
Directors served on the boards of the two funds owned by
plaintiffs, or, if they did, whether they comprised a majority on
those boards.  Although plaintiffs include a one line allegation
in their complaint that "a majority of the Boards is incapable of
evaluating a demand", that allegation is not supported by any
other facts.  In addition, the allegation is now meaningless
considering that plaintiffs were speaking, at the time, to the

---

[9] A court must look to the law of the state where the
mutual fund is incorporated for the standards governing whether
demand is excused as futile.  Kamen v. Kemper Fin. Serv., Inc.,
500 U.S. 90, 108-09 (1991).  The two funds owned by plaintiffs
are Maryland Corporations.  Based on our previous holding that
these are the only two funds on whose behalf plaintiffs could
possibly assert a derivative action, Maryland law applies.

boards of the approximately 155 mutual funds. In short, based on plaintiffs' complaint, we have no way of knowing whether these nine Directors were simply rogue minorities on the boards of the two relevant funds who convinced well-meaning directors to approve their scams, or whether, as required by Maryland law, they comprised a majority of the board and were so personally and directly conflicted or committed to the decision in dispute that they could not reasonably be expected to respond to a demand in good faith.

Without such key information, we cannot make a finding that demand should be excused as futile under Maryland law. As such, we will dismiss Count V, without prejudice. After a re-evaluation of the facts, plaintiffs may, or may not, wish to seek leave to amend their complaint in an attempt to meet the requirements of Maryland law.[10]

---

[10] If plaintiffs do so, we can then, if appropriate, consider any arguments that the IAA claim has not been adequately pled under Rule 9(b). As the situation currently stands, it would be improper for the court to consider this argument based on a complaint that was drafted to address 155 funds, when the court has now limited this cause of action to only 2 funds. The circumstances have changed significantly, as will plaintiffs' allegations should they wish to re-assert their IAA claim.

26

F.   Counts VII, VIII, IX, and X - Pre-empted by SLUSA

All defendants have moved to dismiss Counts VI[11], VII, VIII, IX, and X, on the ground that they are preempted by the Securities Litigation Uniform Standards Act of 1988 ("SLUSA"), 15 U.S.C. §77p(b), 15 U.S.C. §78bb(f)(1). According to defendants, because plaintiffs allege a misrepresentation or omission of a material fact in connection with the purchase or sale of securities, plaintiffs' state law claims are preempted by federal law. Plaintiffs argue that because they have carefully defined their Proposed Class to include only those people who held securities, not those that bought or sold them, their claims survive federal preemption.   The court finds that the state law claims are preempted by SLUSA and dismisses Counts VI, VII, VIII, IX, and X.

SLUSA preempts covered class actions that allege a misrepresentation or omission of material fact in connection with the purchase or sale of a covered security.   15 U.S.C. §78bb(f)(1)(A). This language mirrors existing federal securities law under 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934, which has interpreted the phrase broadly. See 15 U.S.C. §78j(b), 17 C.F.R. §240.10b-5. The dispositive question in this case is whether plaintiffs' case alleges misrepresentations or

_____

[11] Plaintiffs have voluntarily abandoned Count VI. Therefore, we have not considered defendants' separate argument that plaintiffs' claim under Pennsylvania's unfair trade practices act fails because securities do not qualify as goods or services under the statute.

27

omissions "in connection with the purchase or sale of a covered security".

The Court of Appeals for the Third Circuit has recently set forth a number of factors to be considered in distinguishing between preempted and non-preempted claims under SLUSA: (1) whether the fraudulent scheme coincides with the purchase of securities; (2) whether the alleged misrepresentations or material omissions were disseminated to the public in a medium upon which a reasonable investor would rely; (3) whether the nature of the parties' relationship is such that it necessarily involves the purchase or sale of securities; and (4) whether the prayer for relief connects the state law claims to the purchase or sale of securities. Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 302 (3d Cir. 2005) (citing cases). These factors are not exclusive, but serve as guideposts in a flexible preemption inquiry. Id. at 302 n.7.

As an initial matter, we must dispense with plaintiffs' contention that because they defined their Proposed Class to include only "holders" of securities, the analysis ends there. First, our Court of Appeals has not yet issued a ruling on whether or not class actions asserted by "holders" (i.e., non-purchasers and non-sellers), as plaintiffs contend is the case here, are preempted by SLUSA. Rowinski, 398 F.3d at n.9. In Rowinski, the Court of Appeals acknowledged the arguments in

28

support of and opposition to preemption in such circumstances, and explicitly stated that "[w]e need not explore this frontier of SLUSA." Id. Therefore, even if we determined that plaintiffs have asserted a true "holder" case, we would not automatically conclude that the state law claims were not preempted under SLUSA. Although we need not, and do not rule on this issue, we note that SLUSA's preemption language is not limited to cases involving damages that were suffered as a result of the purchase or sale of securities. Instead, preemption under SLUSA focuses on whether untrue statements or omissions of material fact were made in connection with the sale or purchase of securities.

Second, a preemption determination is not a "name game"; the fact that a plaintiff calls its case a "holder class action" does not make it so. This court must make a independent assessment of all the allegations of the complaint and the relevant legal factors as set forth by our Court of Appeals to reach a reasoned decision on the preemption issue. See Prof'l Mgmt. Ass'n, Inc. Employees' Profit Sharing Plan v. KPMG LLP, 335 F.3d 800, 803 (8th Cir. 2003); Riley v. Merrill Lynch, Peirce, Fenner & Smith, Inc., 292 F.3d 1334, 1345 (11th Cir. 2002); Korsinksy v. Salomon Smith Barney, Inc., 2002 WL 27775, at *2 (S.D.N.Y. Jan. 10, 2002).

Upon application of the Rowinski factors to this case, we find that the state law claims are preempted. First, we find that

29

the complaint alleges a fraudulent scheme coinciding with the purchase or sale of securities. At its heart, the complaint alleges that false statements or omissions were made at the point of sale of mutual funds in order to induce unwitting investors into the Dreyfus Funds. The whole purpose and effect of the alleged schemes was to boost sales of the Dreyfus funds in order to increase commissions, fees, and charges. Without a sale of a security, the scheme would have been an exercise in futility. See Rowinski, 398 F.3d at 302.

Second, we find that plaintiffs allege that defendants disseminated their misrepresentations or omissions in a medium upon which a reasonable investor would rely, namely, the prospectus and other sales and marketing materials at brokerage houses, and other points of sale. Id. Third, we find that not all of the defendants have a relationship with plaintiffs that necessarily involves the purchase or sale of securities. Id. While the Distributor Defendants necessarily involve a buy-sell transaction, the Director Defendants do not. In this case, evaluation of this factor is not particularly telling.

Finally, because plaintiffs seek recovery of marketing fees, brokerage fees, and other fees that were calculated based on sales commissions, we find that their desired recovery connects their claims to the sale or purchase of securities. Id. at 303. Looked at another way, without increased purchases of Dreyfus

30

Funds as a result of defendants' fraudulent schemes, these fees would presumably not have been objectionable to plaintiffs. Plaintiffs want to recover the fees because they were allegedly inflated due to defendants' sales and marketing schemes.

On balance, we conclude that plaintiffs' state law claims allege actions that were taken "in connection with the purchase or sale of a covered security". Regardless of how plaintiffs have defined their Proposed Class or worded their pleadings, their complaint is about sales and marketing schemes that were used to steer unwitting investors into the Dreyfus Funds in order to boost defendants' fees and charges. The state law claims are preempted by SLUSA. We dismiss Counts VI, VII, VII, IX, and X.[12]

## IV. CONCLUSION

Premier's Motion to Dismiss [doc. no. 22] is granted. All claims against Premier have been dismissed. Similarly, all claims against the Director Defendants have been dismissed. Their Motion to Dismiss [doc. no. 25] is granted. The Nominal Defendant's Motion to Dismiss [doc. no. 33] is also granted.

Parent Companies', Dreyfus Service Corporation's, and Investment Advisor Defendants' Motion to Dismiss [doc. no. 29] is granted, in part, and denied, in part. Plaintiffs have adequately

---

[12] Given our disposition of these claims on federal preemption grounds, we need not reach defendants' argument that the claims fail because they were not brought derivatively.

31

pled a claim under section 36(b) of the ICA against the Investment Advisor Defendants and Dreyfus Service Corporation. However, we note that this claim is limited, by statute, to the one year time period prior to the date that this suit was filed. The section 48(a) claim survives to the extent it is based thereon. All other claims against these defendants have been dismissed. These defendants' motions for leave to file notice of supplemental authority [doc. nos. 56, 58] are granted.

The appropriate order follows.

32

AO 72A
(Rev.8/82)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

)
In re DREYFUS MUTUAL FUNDS    )  Master File 04-0128
FEE LITIGATION                )
                              )

#### ORDER

Therefore, this 28th day of September, 2005, IT IS
HEREBY ORDERED that Premier's Motion to Dismiss [doc. no. 22] is
granted;

IT IS FURTHER ORDERED that Director Defendants' Motion to
Dismiss [doc. no. 25] is granted;

IT IS FURTHER ORDERED that Nominal Defendant's Motion to
Dismiss [doc. no. 33] is granted;

IT IS FURTHER ORDERED that Parent Companies', Dreyfus
Service Corporation's, and Investment Advisor Defendants' Motion
to Dismiss [doc. no. 29] is granted, in part, and denied, in part;

IT IS FURTHER ORDERED that Parent Companies', Dreyfus
Service Corporation's, and Investment Advisor Defendants' Motions
for Leave to File Notice of Supplemental Authority [doc. nos. 56,
58] are granted.

IT IS HEREBY ORDERED that Counts I, II, VI, VII, VIII, IX, and X are dismissed with prejudice, Count V is dismissed without prejudice, and Count III cannot be asserted against the Director Defendants or Premier, but can be asserted against the Investment Advisor Defendants and Dreyfus Service Corporation.

BY THE COURT:

_____, J.

cc:    All Counsel of Record

34

AO 72A
(Rev.8/82)